UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GEORGE D. MCCLEARY, III,           )
                                   )
            Petitioner,            )
                                   )
                                   )
    v.                             )        Case No. 4:17-CV-1557-SPM
                                   )
CHANTAY GODERT,                    )
                                   )
            Respondent.            )

## MEMORANDUM AND ORDER

This matter is before the undersigned on the petition of Missouri state prisoner George G.

McCleary, III ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and

the Suggestions in Opposition to Conducting an Evidentiary Hearing (Doc. 22), which the Court

construes as a motion for reconsideration of the Court's prior order granting Petitioner's request

for an evidentiary hearing. Petitioner is represented by counsel. The parties have consented to the

jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

(Doc. 16). For the following reasons, the motion for reconsideration will be granted, and the

petition will be denied without an evidentiary hearing.

### I.  FACTUAL BACKGROUND

The facts related to Petitioner's conviction were summarized by the Missouri Court of

Appeals as follows:

> On March 9, 2010, Jeff Doerr, a detective with the Warren County Sheriff's
> Department, was conducting surveillance across the street from a Walgreen's store
> in Warrenton to see if people entering the store might be reasonably suspected of
> involvement with methamphetamine. He was looking for those he either previously
> had contact with in connection with methamphetamine or those who had the

distinctive appearance of a methamphetamine user. Detective Doerr observed the defendant enter and exit the store, and return to his truck with a white bag in hand. Further investigation revealed that the truck the defendant was driving was registered to a person known to be associated with methamphetamine manufacturing and who shared the defendant's last name.

Detective Welschmeyer of the Warren County Sheriff's Department then observed the truck enter a parking lot for a strip mall several blocks south of Walgreen's. Detective Doerr arrived to watch the parking lot and observed the defendant and Mary Mehrle leaving the Dollar General store with a yellow bag. Detective Doerr then observed the defendant drive to Chic Lumber where he and Mehrle exited the store with a brown bag and drove east toward Wright City. After receiving a call from Detective Doerr, Lieutenant Schoenfeld inquired at Chic Lumber and learned that the defendant had bought plastic tubing. Knowing that persons involved with methamphetamine commonly go from store to store to purchase supplies for manufacturing the drug, Detective Doerr followed the defendant's truck as it proceeded toward Wright City. Detective Doerr observed the defendant make a left turn without using his turn signal, and requested that Detective Welschmeyer, who was following Detective Doerr in a marked patrol car, make the traffic stop.

Detective Welschmeyer also observed the defendant make a left turn without signaling, and initiated a traffic stop. The State presented at trial the audio recording of the traffic stop and Detective Welschmeyer's exchange with the defendant. Within the first two minutes of the stop, Detective Welschmeyer asked the defendant and Mehrle what they were doing that day, took the identification of both, and asked whether there was anything in the truck that he needed to know about, such as weapons or drugs. The defendant replied that there was not. At about two minutes into the stop, Detective Welschmeyer requested a record check of the defendant and Mehrle. At about three minutes into the stop, Detective Welschmeyer again asked whether there was anything in the truck that he needed to know about. Detective Welschmeyer asked if the defendant had a problem with him taking a look in the truck, and the defendant replied "[n]o, there's nothing in there" and a few seconds later, "[n]o drugs whatsoever." About thirty seconds later, the defendant gave Detective Welschmeyer consent to search his person. All of this occurred within the first four minutes of the stop.

In the truck, Detectives Welschmeyer and Doerr found a Dollar General bag containing Kingsford lighter fluid, a brown bag containing plastic tubing, and a Walgreen's bag containing instant cold packs. In plain view on the front seat was a piece of loose-leaf paper containing a list of several items, namely "Kingsford," "fire," lye, batteries, salt, and cold packs.[1] Detective Doerr recognized the list as a recipe for methamphetamine that was missing only the pseudoephedrine, and the defendant had in his possession three of the items commonly associated with methamphetamine production—namely the lighter fluid, tubing, and cold packs.

---

[1] Sulfuric acid is commonly referred to as "fire" within methamphetamine circles.

At about six and one-half minutes into the stop, Detective Welschmeyer placed the defendant under arrest and read him his *Miranda* warnings.[2] The results of the record checks came in about eight minutes into the stop. The defendant told the detectives that he had just been released from prison for manufacturing methamphetamine, was in need of money, and would not be paid until the end of the week. He explained that he had made a bad decision in agreeing to purchase the items on the list in return for payment. The defendant showed the officers the residence where he had agreed to deliver the items. When the officers later returned to the residence, they found an anhydrous ammonia generator made from cold packs.

The State charged the defendant as a persistent drug offender with attempt to manufacture a controlled substance, specifically methamphetamine. The defendant filed a motion to suppress the physical evidence seized and any incriminating statements he made. The trial court denied the defendant's motion after an evidentiary hearing. The defendant also filed a motion in limine which sought, inter alia, to prevent the State from questioning defense witness Mary Mehrle about a municipal shoplifting violation. The trial court granted this portion of the defendant's motion in limine unless Mehrle opened the door by testifying to the effect that she had never been arrested or been in trouble.

At trial, the defendant's girlfriend, Mary Mehrle, testified as the only defense witness. She explained that she bought lighter fluid because she planned to barbecue that evening, and she bought plastic tubing for an aquarium she had just purchased. Mehrle testified that the defendant told her he was going into Walgreen's to get something for his knee pain. She then described the traffic stop and how the lieutenant told her over and over to tell the officers the real purpose of the plastic tubing, and how she was handcuffed and placed in the patrol car. Mehrle disclosed that she had a DWI and a misdemeanor trespassing conviction.

On cross-examination, the State challenged Mehrle's recollection of the events. The State then asked Mehrle if she had taken notes or made audio recordings during the incident, and Mehrle replied that she had not. On redirect, the defense questioned Mehrle about the significance of the events and her memory of them.

> Q.	Miss Mehrle, was this the only event in your life that happened like this, that you had this kind of experience being stopped and being interrogated by the police and have your boy friend [sic] hauled off to jail?
>
> A.	Yes.
>
> Q.	Would an event like that tend to stick in your memory?
>
> A.	Very much.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> Q.    You weren't involved in a bunch of other cases making a bunch of
>        other arrests of other people; were you?
>
> A.    No.
>
> Q.    That's very easy for you to remember what happened?
>
> A.    Very, yeah. It sticks there.

At a sidebar, the State contended that Mehrle had opened the door to cross
examine her about her municipal shoplifting violation because she "just testified
that she's never been in a situation like this with the police interrogating her. I think
she's opened the door to the stealing from Wal-Mart." The defendant argued that
the door had not been opened, that the State's characterization of the question and
the witness's response was neither what he had asked nor what the witness had
testified. The trial court responded that "[i]t's not the exact same situation, it can
be just a similar situation. I think you've opened it up." The trial court overruled
the defendant's objection and allowed the State to cross-examine Mehrle on that
subject. The State asked Mehrle if she remembered "being detained for stealing
staples, trash bags, trash bags [sic], pseudoephedrine, shirts[,] and baby wipes"
from Walmart. The State then elicited evidence that the police gave Mehrle a ticket
for the stealing, and that she pleaded guilty to the offense. The defendant did not
specifically object to the State's reference to pseudoephedrine in the cross
examination. The State agreed that it would not mention the pseudoephedrine
shoplifted from Walmart in its closing argument. However, we do not have a
transcript of the State's closing argument in the record before us.

The jury found the defendant guilty of attempt to manufacture a controlled
substance, namely methamphetamine. The trial court sentenced the defendant as a
persistent drug offender to 15 years of incarceration.

Resp't Ex. C, at 1-6.

On March 21, 2013, Petitioner filed a direct appeal of his conviction, asserting two points

of error. Resp't Ex. A. On March 11, 2014, the Missouri Court of Appeals denied both points and

affirmed the judgment of the trial court. Resp't Ex. C. On April 21, 2014, Petitioner filed a *pro se*

motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Resp't Ex. I, at

7-12. Counsel was appointed, and on July 21, 2014, Petitioner filed an amended motion for post-

conviction relief pursuant to Missouri Supreme Court Rule 29.15. *Id.* at 14-20. The motion court

denied the motion. *Id.* at 21-28. Petitioner appealed, and the Missouri Court of Appeals affirmed the judgment of the motion court. Resp't Ex. G.

In the instant petition, Petitioner asserts four claims: (1) that the trial court erred in overruling Petitioner's motion to suppress physical evidence and statements and admitting that evidence at trial, because the officers illegally expanded the scope of their initial traffic stop without reasonable suspicion that he was committing or had committed a crime, a violation of the Fourth Amendment; (2) that the trial court erred in allowing the State to question a defense witness about the prejudicial details of a prior municipal stealing conviction that involved the State eliciting incorrect, prejudicial facts, which violated Petitioner's right to due process of law and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (3) ineffective assistance of trial counsel based on trial counsel's failure to object to the State's misrepresentation of the circumstances of Mehrle's prior stealing conviction; and (4) ineffective assistance of trial counsel in failing to raise and preserve for appeal an off-the-record incident in which Mary Mehrle recognized a juror in the case as a man who had previously sued her after a car accident.[3]

On August 17, 2020, the Court entered an order finding that an evidentiary hearing was warranted to develop facts in support of Petitioner's argument that he could show cause to overcome his procedural default of Ground Four of his petition—ineffective assistance of trial counsel based on trial counsel's failure to raise with the Court the issue of a juror with a possible

---

[3] In the Petition, Petitioner frames Ground Four as a claim of ineffective assistance of post-conviction counsel based on post-conviction counsel's failure to raise this issue. However, because "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254," 28 U.S.C.A. § 2254, and based on Petitioner's discussion of this claim in the Petition and Reply, the Court construes Ground Four as a claim of ineffective assistance of trial counsel,, the default of which may be excused by the ineffective assistance of post-conviction counsel.

bias against Petitioner's sole witness. (Doc. 17). On October 30, 2020, Respondent filed a motion requesting reconsideration of that order in light of a recently-obtained voir dire transcript. (Doc. 22). Petitioner filed an opposition to the motion. (Tr. 28). The Court will address that motion for reconsideration below, in its discussion of Ground Four.

## II.   LEGAL STANDARDS

### A.  Legal Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "In the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under the AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state court 'unreasonably applies' Supreme Court precedent if it 'identifies the correct governing legal principle from th[e] [Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Williams*, 529 U.S. at 413). Finally, "[a] state court decision is based on an unreasonable determination of the facts only if the 'court's presumptively correct factual findings do not enjoy support in the record." *Bahtuoh v. Smith*, 855 F.3d 868, 873 (8th Cir. 2017) (quoting *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006)).

### B.  Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for

which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### III.   DISCUSSION

#### A. Ground One: Trial Court Error—Admission of Evidence Obtained in Violation of the Fourth Amendment

In Ground One, Petitioner asserts that the trial court error in overruling Petitioner's motion to suppress physical evidence and statements and admitting that evidence at trial, because the officers illegally expanded the scope of their initial traffic stop without reasonable suspicion that he was committing or had committed a crime, a violation of the Fourth Amendment. Respondent argues that this claim is not cognizable in this federal habeas proceeding. The Court agrees.

The Supreme Court of the United States has held that Fourth Amendment claims are not cognizable in a federal habeas action unless a petitioner did not receive a "full and fair opportunity" to litigate the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Eighth Circuit has interpreted *Stone* to bar habeas relief for Fourth Amendment claims except in two distinct situations: (1) where the "state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) where "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994) (*en banc*) (adopting the Second Circuit's test set out in *Capellan v. Riley*, 975 F.2d 67, 70 (2nd Cir. 1992)).

The Eighth Circuit has noted that "[a]pplication of the first part of the test is simple enough—either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not)." *Id.* at 1272. Missouri provides a procedure for raising Fourth Amendment claims. *See* Missouri Supreme Court Rule 24.05 (authorizing criminal defendants to file pretrial motions to suppress evidence); Mo. Rev. Stat § 542.296.5(5)

(specifying that one of the possible grounds for a motion to suppress is that the search and seizure violated the Fourth and Fourteenth Amendments to the Constitution of the United States). *See also, e.g.*, *Wright v. Godert*, No. 4:15-CV-00720-PLC, 2019 WL 414807, at *8 (E.D. Mo. Feb. 1, 2019) (discussing Missouri's procedure for litigating Fourth Amendment claims and finding a petitioner's habeas claim based on the Fourth Amendment was barred under *Stone*). Thus, Petitioner does not fall under the first exception to the *Stone* bar.

For the second prong—whether a defendant was precluded from using the State's procedure due to an "unconscionable breakdown in the underlying process"—the Eighth Circuit has stated that, "it will be the rare case where there is a failure of that mechanism that reaches constitutional dimensions." *Willett*, 37 F.3d at 1272. The Eighth Circuit further instructed, "A determination of whether there has been a breakdown in the state's procedure does not require a probing review of the state court record, either of the factual findings pertaining to the petitioner's search-and-seizure claims or of the application of Fourth Amendment principles to those facts. " *Id.* "The federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Id.* at 1273.

Petitioner does not allege the existence of an "unconscionable breakdown in the underlying process" for litigating Fourth Amendment claims, *id.* at 1272, and the Court's own review of the record reveals no such breakdown. Petitioner raised his Fourth Amendment argument in his motion to suppress and in his direct appeal, and the issue was addressed by both the trial court and the Missouri Court of Appeals. Resp't Ex. A, at 11-18; Resp't Ex. C, at 6-9.

In his briefing, Petitioner does not argue that either prong of the *Willett* test is satisfied. Petitioner acknowledges the Eighth Circuit's decision in *Willett*, but argues that "the better

approach . . . applies a standard that examines the substance of the state court's reasoning in determining whether such review was full and fair." Reply, at 3. Petitioner directs the Court to cases from circuits that use this approach and he asks the Court to conduct a full review of the facts and reasoning in the state court's decision. But the Eighth Circuit, in *Willett*, expressly rejected the suggestion that such a review was permissible under *Stone*, stating:

> [I]f the *Stone* rule permitted this sort of inquiry into state court findings of fact and conclusions of law on a federal petition for writ of habeas corpus, then it seems to us *Stone* might just as well never have been written, for such an application would result at best in only marginal limitation upon habeas review of Fourth Amendment claims. Moreover, such broad federal habeas review of the merits of a state prisoner's Fourth Amendment claims is inconsistent with Stone's teaching that state courts are as capable of fairly and competently adjudicating Fourth Amendment claims as are federal courts. *Stone*, 428 U.S. at 494 n. 35  ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."). A determination of whether there has been a breakdown in the state's procedure does not require a probing review of the state court record, either of the factual findings pertaining to the petitioner's search-and-seizure claims or of the application of Fourth Amendment principles to those facts.

*Willett*, 37 F.3d at 1272. This Court is bound by the Eighth Circuit's decision in *Willett* and is not at liberty to consider the merits of the approaches taken by courts in other circuits.

For all of the above reasons, Petitioner's Fourth Amendment claims are not cognizable for purposes of federal habeas review, and Ground One will be denied.

### B.  Ground Two: Trial Court Error—Allowing Questioning of Defense Witness About Prior Conviction

In Ground Two, Petitioner argues that the trial court error in allowing the State of Missouri to question a defense witness about the prejudicial and inaccurate details of a prior municipal stealing conviction. Specifically, Petitioner challenges the prosecutor's inaccurate suggestion, during questioning, that Mehrle had been previously detained for stealing pseudoephedrine (a substance often used in the manufacture of methamphetamine), among other items, when she had

actually been detained for stealing Suphedrine PE (a drug that does not contain an ingredient involved in methamphetamine production). Petitioner argues that this questioning involved the State eliciting incorrect, prejudicial facts, and that this error violated McCleary's right to due process of law and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied the claim on plain error review.[4]

"Improper remarks by the prosecutor can violate the Fourteenth Amendment if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Barnett v. Roper*, 541 F.3d 804, 812 (8th Cir. 2008) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *See also Rousan v. Roper*, 436 F.3d 951, 960 (8th Cir. 2006) ("To grant habeas relief based on an inappropriate comment from a prosecutor, the comment must be so inappropriate

---

[4] The Court notes that it appears that this claim may have been procedurally defaulted based on Petitioner's failure to raise it at trial or in a motion for new trial. Although the Missouri Court of Appeals reviewed the claim for plain error, a state court's discretionary plain-error review of unpreserved claims cannot excuse a procedural default. *See Clark v. Bertsch*, 780 F.3d 873, 877 (8th Cir. 2015); *see also Clayton v. Steele,* No. 4:14-CV-1878-RLW, 2018 WL 1382401, at *6 (E.D. Mo. Mar. 16, 2018) (finding the petitioner's claim of trial court error in admission of evidence was procedurally barred where the Missouri Court of Appeals reviewed the claim only for plain error because it had not been raised in the motion for new trial); *Floyd v. Griffith*, No. 4:15CV1145 JCH, 2016 WL 199078, at *1-*2 (E.D. Mo. Jan. 15, 2016) (same). The Court also notes that to the extent that this claim has been procedurally defaulted, Petitioner might argue that the default was excused by ineffective assistance of trial counsel in not raising the issue at trial or in a motion for new trial. However, as discussed in Ground Three, the state court reasonably determined that this claim of ineffective assistance was without merit, and therefore the alleged ineffective assistance of counsel could not serve as cause to excuse the procedural default. However, both parties treat the Missouri Court of Appeals' decision as an adjudication on the merits, and neither party suggests that the claim has been procedurally defaulted. The Eighth Circuit has held that the district court should not *sua sponte* decide a case based on a procedural default without giving the parties fair notice and an opportunity to present their positions. *See Dansby v. Hobbs*, 766 F.3d 809, 824 (8th Cir. 2014); *accord Deck v. Steele*, No. 4:12-CV-1527-CDP, 2015 WL 5885968, at *2 (E.D. Mo. Oct. 8, 2015). Thus, the Court will treat the Missouri Court of Appeals' decision as an adjudication on the merits and will not deny Ground Two as procedurally defaulted.

as to make the trial fundamentally unfair"). To grant habeas relief based on an improper remark by a prosecutor, "[t]here must be a 'reasonable probability' that the error affected the jury's verdict and that without the error, the jury's verdict would have been different." *Id.* (citing *Newton v. Armontrout*, 885 F.2d 1328, 1336-37 (8th Cir. 1989)). *See also Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (stating that to obtain habeas relief based on improper remarks by a prosecutor, "[a] petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'") (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)).

In reviewing this claim, the Missouri Court of Appeals noted that it has "the authority and the discretion to review plain errors affecting substantial rights if we determine that manifest injustice or miscarriage of justice has occurred" and that to reverse based on a plain error, it must find that "there exists a reasonable probability the verdict would have been different but for the alleged error." Resp't Ex. C, at 11-12. The court found that the State had exceeded the scope of proper cross-examination by delving into the details of the items involved in the municipal shoplifting violation,[5] and that the State's mention of pseudoephedrine was troubling because the reference to a substance commonly known to be involved in the manufacture of methamphetamine may have been adduced not only as impeachment evidence, but also to demonstrate the propensity of Petitioner's girlfriend to commit the charged offense. *Id.* at 13-14. However, it went on to state:

> Although the asserted claim of plain error facially establishes substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred, based on the circumstances of this case, we find no manifest injustice or miscarriage

---

[5] The prosecutor was questioning Merhle about her prior shoplifting conviction to impeach her after she testified that the incident giving rise to Petitioner's conviction was the only event in her life when she had had this kind of experience—of being stopped and interrogated by the police. Resp't Ex. C, at 11-12.

of justice actually occurred. First, the evidence against the defendant, including his admissions, was overwhelming. In addition, the State made only one reference to pseudoephedrine in its cross-examination of Mehrle. Finally, the defendant has not provided us with a transcript of the State's closing argument, but the record reflects the State agreed in advance that it would not mention the pseudoephedrine in closing. The appellant has the duty to ensure that the record on appeal includes all of the evidence and proceedings necessary for us to determine the questions presented. Because the defendant did not file a transcript of the State's closing argument with this Court, we will infer that the closing argument was favorable to the trial court's ruling and unfavorable to the defendant's argument. It does not appear that the State unduly emphasized the details of the violation with its single reference to pseudoephedrine.

Because of the overwhelming evidence of the defendant's guilt and the fact that the reference to pseudoephedrine was not overemphasized, we find the error alleged did not have a decisive effect on the jury's determination and no reasonable probability exists the verdict would have been different but for the alleged error.

*Id.* at 14. (citations omitted).

The Missouri Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Although the Missouri Court of Appeals did not refer to the applicable federal law discussed above, it applied essentially the same standard this Court would apply to determine whether a Fourteenth Amendment violation occurred—whether there was "a 'reasonable probability' that the error affected the jury's verdict and that without the error, the jury's verdict would have been different." *See Rousan,* 436 F.3d at 960.

A review of the trial transcripts supports the state court's finding that the reference to pseudoephedrine was not overemphasized. It shows that the prosecutor made only a single, passing reference to Mehrle stealing pseudoephedrine, Resp't Ex. L, at 167, and that the prosecutor agreed not to raise the issue during closing argument, *id.* at 171.

A review of the trial transcript also supports the state court's conclusion that the evidence against Petitioner was overwhelming. The evidence shows that police observed Petitioner and his

13

girlfriend going from store to store, purchasing different items that police testified were commonly used in the manufacture of methamphetamine: Kingsford lighter fluid, plastic tubing, and instant cold packs.[6] Resp't Ex. L, at 21-38; 72-73. Each of these items was introduced as an exhibit at trial. *Id.* at 34-38. On the seat of the car Petitioner and Mehrle were driving, police also found a piece of paper with a list that Detective Jeff Doerr testified he instantly recognized as a recipe for methamphetamines, missing only the pseudoephedrine. *Id.* at 33-34, 39-40. The list contained the following items: "Kingsford," cold packs, lye, "fire," salt, and batteries; Detective Doerr testified about how each of those items is used in the manufacture of methamphetamines.[7] *Id.* at 33, 38-40. The list was introduced as an exhibit at trial. *Id.* at 38. The detectives who questioned Petitioner and Mehrle testified that although Petitioner and Mehrle initially stated that items had been purchased for other purposes (for a barbecue, for an aquarium, and for a hurt knee), upon further questioning Petitioner admitted that he was hurting for money and that he was going to be delivering the items to a person he knew as "Ogre," who would pay him a hundred dollars for the items. *Id.* at 44-46, 91-92, 98.[8] Detective Doerr also testified that Petitioner agreed to show the

---

[6] Detective Jeff Doerr testified that plastic tubing is used in the manufacture of methamphetamines, Resp't Ex. L, at 30, and that lighter fluid is a solvent used in the manufacture of methamphetamines, *id.* at 39. He also testified that instant cold packs contain small pellets and beads that contain ammonia nitrate, which is used in the manufacture of methamphetamines. *Id.* at 35-36. Detective Welshmeyer also testified that, at the time, they were seeing people use cold packs to manufacture their own anhydrous ammonia. *Id.* at 79.

[7] Detective Doerr testified that lye is sodium hydroxide and is used in the methamphetamine manufacturing process. Resp't Ex. L, at 41. He also testified that "fire" is a common term used by people who manufacture methamphetamine; it refers to Liquid Fire, which is a bottle of sulfuric acid. *Id.* at 40. He further testified that salt is mixed with the Liquid Fire to create hydrochloric gas. *Id.* at 41. He also testified that lithium batteries are used in the manufacture of methamphetamines. *Id*. at 40.

[8] At trial, Mehrle testified that Petitioner bought the cold packs because his knee was hurting, that she bought the lighter fluid because she was going to barbecue later that day, and that she bought the tubing for an aquarium she had recently purchased. Resp't Ex. L, at 125, 130-36.

officers where Ogre lived and that he rode with them to Ogre's residence and pointed it out to them; Detective Welschmeyer accompanied them on that drive. *Id.* at 46-47, 76. Detective Welschmeyer also testified that when he and other officers later returned to that location, they found an anhydrous ammonia generator made out of cold packs. *Id.* at 103.

Based on the above evidence, the Court finds that it was not unreasonable for the state court to find that the evidence of Petitioner's guilt was sufficiently overwhelming that there was no reasonable probability that the verdict would have been different had the prosecutor not made the single reference to pseudoephedrine during Mehrle's questioning.

In his Reply, Petitioner cites three cases in support of his position that the state court's decision was unreasonable. *See United States v. Norton*, 639 F.2d 427, 428-29 (8th Cir. 1981) (holding that it was improper for the prosecutor to explain during closing argument that Congress had prohibited the possession of sawed-off shotguns because such weapons have no recreational use and are good for "assault and assault only"; rejecting the government's argument that the conviction should be upheld because the evidence was overwhelming, because "[m]uch of the testimony indicating that Norton possessed the gun was equivocal, and a defense witness rebutted, at least in part, the testimony that Norton had said he had a shotgun in the bedroom"); *United States v. Conrad*, 320 F.3d 851, 855-57 (8th Cir. 2003) (relying on *Norton* and finding that it was improper for a prosecutor to make comments about the purpose of the Gun Control Act; finding prejudice and reversing a conviction for possession of a sawed-off shotgun where "the prosecutor's comments [about the purpose of the statute at issue] were not limited to one phase of the trial," but had been made during opening statement, during closing argument, and during direct examination of a witness, and because a fair conclusion from the evidence may have been that the defendant did not have actual or constructive possession of the gun); *United States v. Miller*, 621 F.3d 730,

732-33 (8th Cir. 2010) (holding that it was improper for the prosecutor to imply, during closing argument, that in order to acquit the defendant, the jury would have to find that a key witness was lying and risking his future career as a police officer; emphasizing that the improper remark had been made "almost immediately before the case was submitted to the jury," making it less likely that the jury had forgotten about it, and that the evidence was not overwhelming, with "curious physical evidentiary questions on the existing record," including questions about how the defendant could have thrown a firearm in the manner asserted by the government and the absence of the defendant's DNA on the firearm).

The Court finds these cases inapposite for several reasons. First, none of these cases involved deferential review of a state court's decision for constitutional error in the habeas context; instead, all three cases involved the Eighth Circuit deciding a matter of federal criminal law on direct appeal. Second, each of these cases involved prosecutorial remarks that were more extensive and/or closer in time to jury deliberations than the remarks at issue here, as well as evidence that was less convincing that the evidence in this case. Finally, each of the cases involved very different crimes, remarks, and factual scenarios than the one at issue in this case, and so they are of limited value in determining whether the Missouri Court of Appeals' analysis of the facts of this case were unreasonable. The Court notes that even if the Eighth Circuit would have decided the case differently than the Missouri Court of Appeals did, that does not mean that the Missouri Court of Appeals' decision was unreasonable.

For all of the above reasons, Petitioner is not entitled to relief on Ground Two, and Ground Two will be denied.

### C. Ground Three: Ineffective assistance of Trial Counsel—Failure to Object to the State's Misrepresentation of the Circumstances of Mehrle's Prior Stealing Conviction

In Ground Three, Petitioner argues that his trial counsel was ineffective by failing to object to the prosecutor's mischaracterization of defense witness Mehrle's prior stealing conviction—specifically, the prosecutor's statement that Mehrle had previously been convicted of stealing several items, including pseudoephedrine, when in fact Mehrle's prior stealing conviction had not involved pseudoephedrine but a different cold medicine that is not used in the manufacture of methamphetamines. Petitioner raised this claim in his motion for post-conviction relief and in his appeal from the denial of that motion, and the Missouri Court of Appeals denied the claim on the merits. Resp't Ex. G, at 2-6.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In assessing the merits of Petitioner's claims, the Missouri Court of Appeals recognized the applicable two-prong *Strickland* test. Resp't Ex. G, at 3. The court addressed only the second prong, finding that "no reasonable probability exists that the outcome would have been different" but for counsel's alleged error. Resp't Ex. G, at 5. The court's reasoning was similar to the reasoning of the Missouri Court of Appeals (on direct appeal) with regard to Ground Two: the Court noted that the evidence against Petitioner was overwhelming and that the reference to pseudoephedrine was not overemphasized and was not mentioned during closing argument. *Id.* The court also noted that after the mention of pseudoephedrine at trial, Petitioner's counsel told the court outside the presence of the jury that he did not hear the State's reference to pseudoephedrine at the time, and that even if he had, he may not have objected because she would not have wanted to call any more attention to the reference. *Id.* at 5-6. The court concluded that "[t]rial counsel's failure to object to this one question, even if error, does not create a reasonable

probability that the outcome would have been different given the overwhelming evidence against [Petitioner]." *Id.* at 6.

The Missouri Court of Appeals' application of *Strickland* was not objectively unreasonable, and its conclusion was well supported by the record. As the Court discussed at length with respect to Ground Two, the evidence against Petitioner was overwhelming, and there is no reasonable probability that absent the single mention of pseudoephedrine during the cross-examination of Mehrle, the outcome of the trial would have been different.

For all of the above reasons, Petitioner is not entitled to relief on Ground Three, and Ground Three will be denied.

### D. Ground Four: Ineffective Assistance of Trial Counsel—Failure to Raise and Preserve for Appeal an Off-the-Record incident in which Mary Mehrle Recognized a Juror in the Case as a Man Who Had Previously Sued Her After a Car Accident

In Ground Four, Petitioner alleges that trial counsel was ineffective for failing to raise and preserve an issue of possible juror bias. Petitioner alleges that his sole witness at trial, Mehrle, had been excluded from the courtroom during the testimony of the other witnesses in the case, but that when she entered the courtroom, she noted that one of the jurors in the case was a man she recognized. She had been involved in a car accident with him previously. The man had alleged that her 15-year-old son had been driving her car, and that Mehrle had misrepresented that she had been driving the car instead. Petitioner alleges that the record does not reflect that either counsel or the juror brought the matter to the court's attention. Petitioner alleges that at an evidentiary hearing, Mehrle would testify that she informed trial counsel of this during trial and that trial counsel did not raise the matter at trial. Petitioner also alleges that if the juror in question was called as a witness, his testimony would confirm these facts. He alleges that trial counsel would testify in a way that would demonstrate his ineffectiveness for not raising this claim.

It is undisputed that Ground Four has been procedurally defaulted. Under Missouri law, claims of ineffective assistance of counsel must be raised in a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. *See* Mo. Sup. Ct. Rule 29.15(a). Petitioner appears to have alleged a variation of his claim in his *pro se* motion for post-conviction relief: he listed as one ground for vacating his conviction that "One juror had prior conflict with my only witness" and explained that he "Didn't know of entire conflict until 2nd day of trial, and counsel nor prosecutor did anything about it." Resp't Ex. I, at 8-9. However, in the amended motion for post-conviction relief, filed through appointed counsel, Petitioner did not raise any claims related to juror bias. Instead, he raised only one claim: that trial counsel was ineffective in failing to object to the prosecutor's mischaracterization of the facts related to Mehrle's prior stealing conviction. Resp't Ex. I, at 14-20. He raised the same claim on appeal from the denial of that motion. Resp't Ex. E. Thus, this claim is procedurally defaulted. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). The Court cannot reach the merits of this claim unless Petitioner can show "either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896.

Petitioner argues that cause exists for the procedural default, because the procedural default was caused by the ineffective assistance of his post-conviction counsel. In *Martinez v. Ryan*, the Supreme Court held that "[i]neffective assistance of counsel at initial-review collateral proceedings may establish cause for a petitioner's procedural default of a claim of ineffective assistance at trial." 566 U.S. 1, 9 (2012). To overcome his procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-

assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

Petitioner requested an evidentiary to develop the record regarding both prongs of the *Martinez* analysis. After review of the petition and reply, the Court entered an order finding that an evidentiary hearing was warranted. (Doc. 17). The Court noted that "[t]he current record contain[ed] no facts related to [the allegations in Ground Four], and the trial transcript d[id] not include a record of voir dire." (Doc. 17, at p. 2). The Court found insufficient facts in the record to address the first prong of *Martinez* (ineffectiveness of post-conviction counsel in failing to raise the claim), noting that it was unclear whether post-conviction counsel was aware of the facts related to the claim and that it was unclear why post-conviction counsel decided not to raise it. (Doc. 17, at p. 4). The Court also found insufficient facts in the record to address the second prong of *Martinez* (whether the underlying ineffective assistance of trial counsel claim was substantial), stating, *inter alia*:

> Assuming Petitioner's factual allegations are accurate, trial counsel was informed that the sole defense witness had a prior contentious relationship with one of the jurors (involving that juror accusing the witness of lying), yet trial counsel did nothing to bring this to the attention of the court. Although it is possible that trial counsel was never actually given this information, or that there was some strategic reason for the decision not to raise the issue, there is nothing in the current record from which the Court can draw either conclusion. If all of the facts alleged by Petitioner are true, and in the absence of any additional facts, Petitioner has a substantial claim that trial counsel's failure to raise this issue would appear to constitute deficient performance. Moreover, there is at least some merit to the argument that if Petitioner can show that the juror had an actual bias that caused juror to view the sole defense witness as dishonest, it could have affected the outcome of the trial.

(Doc. 17, at pp. 3-4).

Approximately two months after the Court entered an order granting Petitioner's request for evidentiary hearing, Respondent filed his Suggestions in Opposition to Conducting an

Evidentiary Hearing (Doc. 22), which the Court construes as a motion for reconsideration of the Courts prior order granting Petitioner's request for an evidentiary hearing. In that motion, Respondent states that he has now obtained a transcript of voir dire from Petitioner's trial (attached as an exhibit to the motion), and Respondent argues that the transcript refutes Petitioner's allegations regarding Ground Four and demonstrates that Ground Four is without merit, making an evidentiary hearing unnecessary.

The voir dire transcript states, in relevant part, as follows:

MR. CHARLES JAMES[9]: [Petitioner] has a girlfriend by the name of Mary Mehrle, and we'll talk about her a little bit more later, but Mary Mehrle— I'll tell you what. Let's talk about her now. Anybody know Mary Mehrle who lives out on Highway E?

VENIREMAN NO. 5: I've heard the name.

MR. CHARLES JAMES: You've heard the name. Do you know her, you think?

VENIREMAN NO. 5: I was involved in an accident with her.

MR. CHARLES JAMES: Pardon me?

VENIREMAN NO. 5: I was involved in an accident with her.

MR. CHARLES JAMES: Your name is Mr. Walker?

VENIREMAN NO. 5: Yes.

MR. CHARLES JAMES: Was that just like a car wreck?

VENIREMAN NO. 5: Yes.

MR. CHARLES JAMES: Would that affect you in this case because she may be a witness?

VENIREMAN NO. 5: No, ma'am. Or sir. I'm sorry.

MR. CHARLES JAMES: Did you call me ma'am?

VENIREMAN NO. 5: I was thinking about her.

---

[9] Mr. James was Petitioner's trial counsel.

| MR. CHARLES JAMES: | Talk to you later. |
|---|---|
| VENIREMAN NO. 5: | I haven't had anything to eat. I'm real real hungry. |
| MR. CHARLES JAMES: | You said an automobile wreck? |
| VENIREMAN NO. 5: | Yes. |
| MR. CHARLES JAMES: | Was there a lawsuit behind that? |
| VENIREMAN NO. 5: | Uh, no there wasn't. |
| MR. CHARLES JAMES: | Got settled? Okay. |
| VENIREMAN NO. 5: | (Indicates.) |
| MR. CHARLES JAMES: | Did you deal with her personally in that case? |
| VENIREMAN NO. 5: | No. |
| MR. CHARLES JAMES: | Nobody leaned out of their car and started cussing or anything like that? |
| VENIREMAN NO. 5: | No. |
| MR. CHARLES JAMES: | You don't have anything particular against Miss Mehrle? |
| VENIREMAN NO. 5: | No. |

MR. CHARLES JAMES: Thank you, sir.

Resp't Ex. N, at 63–65. Mr. Walker served on the jury. Resp. Ex. N at 117-18.

The Court agrees with Respondent that the above transcript shows that Petitioner cannot obtain relief on Ground Four, because it demonstrates that Petitioner's trial counsel was not ineffective under the standards of *Strickland* with respect to his handling of the issue of the potentially biased juror. As discussed above, to show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). The allegations in the petition suggested that Petitioner's counsel had learned of a potentially serious issue of juror bias against his sole witness in an off-the-record incident in the middle of the trial, yet simply ignored that information and proceeded without addressing it at all. Those facts, if proven, might have been sufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and to show that trial counsel had "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The voir dire transcript, however, demonstrates that this is not what occurred. It shows that Petitioner's trial counsel learned of the car accident and potential juror bias issue through his questioning during voir dire. Upon learning of the issue, he asked follow-up questions directed toward determining the nature of the past interaction between the juror and Mehrle, asked follow-up questions directed toward determining whether the potential juror would be biased against Mehrle, and received answers unequivocally indicating that the potential juror had no bias against Mehrle and that the prior interaction between the juror and Mehrle would not affect the juror's ability to decide the case. Based on this record, it is apparent that trial counsel acted entirely reasonably with regard to the potential juror bias issue.

Petitioner argues that an evidentiary hearing is still necessary, because the record is still incomplete. Specifically, Petitioner argues that if this claim had been raised in his state-court postconviction proceedings, additional evidence would have been adduced from trial counsel and Mehrle about the circumstances of the accident, what counsel was told about the circumstances of the accident, and why trial counsel did not question the juror further. The Court acknowledges that more evidence could be developed on these questions, but disagrees that it is necessary to develop

all of that evidence in order to determine whether Petitioner's trial counsel was ineffective under the deferential standards of *Strickland*. In evaluating whether counsel was ineffective,  the Court does not need a complete record of every piece of information counsel received or every reason counsel had for every decision he made, nor is the Court's role to determine whether each decision counsel made was the best possible decision. The current record, which plainly shows that trial counsel competently questioned the juror about his possible bias during voir dire and received unequivocal answers indicating that the juror had no bias against Mehrle, is sufficient for the Court to conclude that counsel's performance falls within the wide range of reasonable professional assistance and was not deficient under the standards of *Strickland*.

Petitioner also argues that the juror's account of the accident is implausible, because the juror acknowledged being involved in an accident with Merhle, yet asserted that he had no contact with her. The Court disagrees. The juror indicated that he did not "deal personally with her" and that nobody "leaned out of their car and started cussing or anything like that." The Court interprets those answers to mean that the juror did not have significant or contentious conversations with Mehrle, and the Court finds nothing implausible about these answers that would have indicated to a reasonable trial attorney that he needed to inquire further.

Because the existing record shows that Petitioner's trial counsel was not ineffective in his handling of the potential juror bias issue, there is no need for an evidentiary hearing. *See, e.g., Thomas v. Payne*, 960 F.3d 465, 474 (8th Cir. 2020) (noting that the decision about whether to grant an evidentiary hearing is within the sound discretion of the district court and stating, "even if an applicant alleges that his counsel's ineffectiveness caused him to omit an ineffective-assistance-at-trial claim in his initial-review postconviction proceeding, a district court may still deny a hearing if it finds the claim not 'substantial' or 'potentially meritorious.'") (quoting *Dansby*

*v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014)). Because there is no merit to Petitioner's ineffective assistance claim, Respondent's motion to reconsider the order setting evidentiary hearing will be granted, and Ground Four will be denied.

## IV.   CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED THAT** Respondent's Suggestions in Opposition to Conducting an Evidentiary Hearing (Doc. 22), which the Court construes as a motion for reconsideration of the Court's prior order granting Petitioner's request for an evidentiary hearing, is **GRANTED**. The Court's prior order granting Petitioner's request for an evidentiary hearing (Doc. 17) is **VACATED**, and Petitioner's request for an evidentiary hearing on Ground Four of his Petition is **DENIED**.

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

26

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.


_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of February, 2021.